IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FOREST OIL CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO: 2:11-cv-00021 |
| BRANTA EXPLORATION & PRODUCTION, | § | |
| LLC;  ET AL. | § | [JURY DEMAND] |
| Defendants. | § | |

**BRANTA DEFENDANTS' MOTION TO DISMISS, MOTION TO TRANSFER VENUE
AND OBJECTION TO MOTION TO REMAND OR ABSTAIN**
**[A portion of this pleading responds to the Motion at Docket No. 4.]**

Defendants Branta Exploration & Production, LLC, Branta Operating Company, LLC, and

Branta LLC (together "Branta Defendants") file this Motion to Dismiss for Lack of Standing,

Motion to Transfer Venue, and Objection to Motion to Remand or Abstain.[1]  In support thereof,

Branta Defendants would respectfully show the Court as follows:

**I**
**SUMMARY OF THE ARGUMENTS**

1.      In this case, Plaintiff Forest Oil Corporation ("Forest") seeks to impose against the

various defendants (the "Defendants") liability for harm directly caused to Forest by bankruptcy

debtor Branta Production Company LLC (the "Debtor"), against whom Forest already holds an

arbitration award.  Forest asserts that the various Defendants controlled the Debtor, forcing it to

commit the acts for which the Debtor was found liable by the arbitrator.  Thus, Forest seeks to

collect from the Defendants that which Forest cannot collect from the Debtor due to the bankruptcy.

---

[1] The Branta Defendants acknowledge the local rules limiting dispositive motions to 30 pages, nondispositive motions to 15 pages, and responses to 15 pages.  The Branta Defendants have, for the convenience of the Court and the parties, combined in one document a dispositive motion (their Motion to Dismiss), a non-dispositive motion (their Motion to Transfer Venue), and a response (their Objection to Remand and Abstention) because they all involve common arguments and would require substantial duplication if presented separately.  The Branta Defendants have separately filed an <u>unopposed</u> motion to exceed the Court's 30-page limit for dispositive motions, in the even the Court would otherwise be disinclined to aggregate the page limits available for each of the types of motion and response presented herein.  The Branta Defendants also have noted in their certificate of conference attached to these motions that none of the parties opposes the Branta Defendants exceeding page limits for the motions presented herein.

2.      Forest lacks standing to pursue any of its claims, because all of Forest's claims are the exclusive property of the Debtor's estate.  All of Forest's claims essentially seek to accomplish two things:  first, Forest's claims all require a finding that Defendants improperly took money and property from the Debtor; and second, Forest's claims all require a finding that Forest deserves title to what would be, were the alleged fraudulent transfer unwound at Forest's urging, property of the bankruptcy estate.  In essence, then, Forest seeks to leapfrog all other creditors of the Debtor by having this Court adjudicate (i) alleged fraudulent transfers by the Debtor to the Defendants, and (ii) Forest's interest in the property so transferred.  Such claims belong exclusively to the Debtor's estate, and Forest lacks standing to pursue them.

## II
## BACKGROUND

***Forest claims the Defendants should be liable for a bankrupt Debtor's debt to Forest because the Defendants improperly siphoned assets away from the Debtor, leaving it unable to satisfy Forest.***

3.      On or about September 17, 2010, Plaintiff Forest Oil Corporation ("Forest") obtained an arbitration award against Branta Production Company LLC ("Debtor"), which is not a party to the instant action.  A true and correct copy of Forest's arbitration award is attached as **Exhibit A** (the "Award")**.**

4.      On November 9, 2010, Forest filed a state court action styled *Forest Oil Corporation v. Branta Production Company LLC*, Cause No. 2010-73991 in the 189th Judicial District Court of Harris County, Texas (the "Harris County Suit").  In the Harris County Suit, Forest sought to confirm the Award.

5.      A few days later, on November 15, 2010, Forest initiated the underlying suit, then styled as *Forest Oil Corporation v. Branta Exploration & Production Company et al.*, Cause No. 776-10 in the 115th Judicial District Court of Uphsur County, Texas (the "Upshur County Suit").  A

true and correct copy (without exhibits) of Forest's later-filed First Amended Petition in the Upshur County Suit is attached as **Exhibit B** (the "Petition" or "Pet.").

6.      In the Petition, Forest asserts claims against certain affiliates of the Debtor and the Debtor's lender.  *Id.* ¶¶ 2-7.  As to these defendants, Forest claims that:

a.  the various Defendants tortiously interfered with the Debtor's performance of one or more contracts, causing the Debtor to incur liability, and to be unable to satisfy, the Award (Pet. ¶ 37);

b.  the various Defendants "directed and controlled the affairs" of the Debtor and are, therefore, liable for the Debtor's liability under the Award (Pet. ¶ 39);

c.  the various Defendants made negligent misrepresentations "on behalf of" the Debtor, causing the Debtor to incur liability under the Award (Pet. ¶¶ 48-51);

d.  the various Defendants "induced" the Debtor into breaching its contract with the Forest and, thus, into incurring liability under the Award (Pet. ¶ 54);

e.  the various Defendants "prevented or hindered" the Debtor's performance of its contractual obligations to Forest, resulting in the Debtor's liability under the Award (Pet. ¶ 54);

f.  the Debtor – under the influence of the Defendants' control – fraudulently transferred money or property to the various Defendants in order to avoid the Debtor's liability under the Award (Pet. ¶¶ 72-77);

g.  the corporate form between the Debtor and the Branta Defendants must be disregarded (pierced), so that "all Branta entities must be held liable for the debts and obligations of" the Debtor, including the Debtor's liability under the Award (Pet. ¶¶ 78-81);

h. the Defendants have wrongfully exercised and are wrongfully exercising dominion and control over the Debtor's interests in certain property, which interests should instead be used to satisfy the Debtor's liability under the Award (Pet. ¶¶ 87-91); and

i. Forest deserves a constructive trust over money wrongfully "siphoned away" from the Debtor by the Defendants (Pet. ¶¶ 92-94).

7.      Forest's Upshur County claims, then, seek to do two things:  first, by claiming Defendants improperly obtained possession and/or control over the Debtor's property and money, all of Forest's claims require that one or more allegedly fraudulent transfers be unwound; and second, by demanding that such money and property be transferred directly to Forest (to the exclusion of the Debtor's other creditors), Forest's claims attempt to have assigned to Forest title to money or property that would be, were the alleged bad transfers unwound at Forest's request, property of the bankruptcy estate.

8.      On January 6, 2011, the Debtor filed for protection under Chapter 7 of Title 11 of the United States Code in *In Re Branta Production Company LLC*, Case No. 11-30393 in the United States Bankruptcy Court of the Southern District of Texas Houston Division (the "Branta Bankruptcy").  On January 10, 2011, a Notice of Suggestion of Bankruptcy was filed in the Harris County Case, resulting in the abatement of that case.

9.      On January 20, 2011, the Branta Defendants removed the Upshur County Suit to the United States District Court for the Eastern District of Texas, creating the instant action.  As stated in the Branta Defendants' Notice of Removal [Docket No. 1], removal was proper because the Upshur County Suit was *at least* "related to" the Branta Bankruptcy, since the outcome of the Upshur County Suit could have a significant effect on the Branta Bankruptcy estate.  *In re Canion*, 196 F.3d 579, 587 (5th Cir. 1999) (holding that related-to-bankruptcy jurisdiction exists "if the

outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy").  Because Forest seeks to hold Defendants liable for the Debtor's debts to Forest, if Forest were to succeed against the Defendants, Forest's claim in the Branta Bankruptcy for recovery of the Award would be reduced, and the Debtor's estate would thereby be increased.  *Id.* (finding related-to-bankruptcy jurisdiction over a suit brought in state court by a judgment creditor (like Forest) against the debtor's friends, relatives and associates (like the Defendants here), seeking to hold those defendants liable for the debtor's judgment, because the outcome of the state court action would affect the size of the bankruptcy estate).

### III
### MOTION TO DISMISS FOR LACK OF STANDING

*STATEMENT OF THE ISSUE:*
*Whether the Debtor's estate has the exclusive right to assert Forest's claims against the Defendants, such that Forest lacks standing to pursue this matter further.*

10.     This lawsuit is little more than a thinly-veiled attempt to force the defendants to pay Forest for the Debtor's liability under the Award.  The gravamen of Forest's claims is that the defendants in this lawsuit are responsible for the bankrupt Debtor's liability under the arbitration Award because these Defendants "directed and controlled the affairs of [the Debtor] at all times – deliberately, intentionally, and in concert one with the other."  Petition ¶ 39.  In its Motion for Remand and Abstention [Docket No. 4] (its "Motion"), Forest has now conceded that all of its claims are merely "limited claims for [the Defendants'] ***derivative*** liability."  Motion ¶ 13.  Because the harm alleged by Forest derives in the first instance from harm Forest asserts was done to the Debtor, Forest's claims are the exclusive property of the Debtor's estate.  Accordingly, this Court must dismiss Forest's claims for lack of standing.

11.     The filing of a bankruptcy petition creates an estate that includes all legal or equitable interests of the debtor in property as of the commencement of the case.   11 U.S.C. § 541(a)(1).  Among the interests included in the estate are legal causes of action.  *In re*

*MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983) ("all legal or equitable interests" includes all causes of action).  Any cause of action that can be asserted by a Debtor is, thus, the exclusive property of the bankruptcy estate, and the bankruptcy trustee therefore has exclusive standing to assert the claims. *Id.* at 1274.  Allowing creditors to assert a cause of action that might also be asserted by the trustee could enable some creditors, were they successful in asserting such claims, to leapfrog other creditors and obtain property from third parties that could have been brought into and made a part of the estate had the claims been asserted by the bankruptcy trustee. To prevent this, courts have held that any action vested in the bankruptcy trustee cannot be brought by a creditor acting alone without the bankruptcy court's express permission.  *Id.* at 1175 (reasoning that the bankruptcy trustee should be able to step into the shoes of a creditor for the purpose of securing a benefit for all creditors, "not just those who win a race to a judgment").

12.     A claim belongs to the estate "if it alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised the claim for its direct injury under applicable law." *In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994).  The analysis hinges *not* on the name assigned to a cause of action, nor on the target of any alleged conduct, but on whether the harm asserted derives, in the first instance, from harm to the debtor.  *Id.* at 1285.  Moreover, it is of no consequence that the debtor's ability to *successfully* assert a claim may be less robust than a creditor's:

> That the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim.  The latter, of course, determines what is, or is not, property of the bankruptcy estate.

*Id.* at 1286.  The determination of who owns a cause of action "is a matter of law based on the application of the legal standard discussed above to the facial allegations in the complaint."  *Id.* at 1285.

13.     Forest's facial allegations make absolutely clear that its harm is solely the result of the Defendants' repeated (alleged) abuses of the Debtor.  Thus, for example, Forest claims that "[Defendants] Guggenheim and Branta conspired to tortiously interfere with Forest's contracts with [the Debtor]" (Petition ¶ 37); "[Defendants] Guggenheim and Branta directed and controlled the affairs of [the Debtor] at all times – deliberately, intentionally, and in concert one with the other" (*id.* ¶ 39); the Defendants induced the Debtor into breaching its contracts with Forest, and prevented the Debtor from performing under those contracts (*id.* ¶ 54); and so on.  In this case, therefore, all of Forest's claims derive from harm to the Debtor, and could have been raised by the Debtor.  As a matter of law, and as is more thoroughly discussed below, Forest's claims therefore belong to the Debtor's estate, and Forest lacks standing to pursue them.

### a.   Forest's claim for piercing the corporate veil belongs to the Debtor's estate.

14.     In its claim for piercing the corporate veil, Forest asserts that the Debtor was the Branta Defendants' alter ego, and that "all Branta Defendants must be held liable for the debts and obligations of [the Debtor]."  Petition ¶ 81.  In essence, the claim is that the Defendants misused the Debtor entity by siphoning away assets, leaving the Debtor unable to satisfy amounts Forest claims it was owed.  *See id.* ¶¶ 37-40.

15.     It is now well-settled that alter-ego claims like these, brought by a single creditor against a bankrupt debtor's affiliates to recover for the debtor's debts to the plaintiff-creditor, are without qualification the exclusive property of the Debtor's estate once a bankruptcy case is filed. *See, e.g., In re Moore,* 608 F.3d 253, 258-59 (5th Cir. 2010) ("Our decisions in *S.I. Acquisition* and *Schimmelpenninck* … control as to the alter ego claims:   those claims are property of the estate…."); *In re Schimmelpenninck*, 183 F.3d 347, 358 (5th Cir. 1999) (To allow a single creditor to pursue his individual debt against a debtor's relatives based on veil piercing would enable him to make an " 'end-run', skirting other creditors to reach the bankrupt estate."); *In re S.I. Acquisition*,

*Inc.*, 817 F.2d 1142 (5th Cir. 1987) (holding that an alter ego claim is property of the estate because it "is based on allegations that if proven would benefit all … creditors, i.e., making more assets available to satisfy [the debtor's] debts").  Accordingly, Forest lacks standing to assert its piercing the corporate veil claim.  *See* Petition ¶¶ 78-81.

### b.  Forest's "tortious interference" claim belongs to the Debtor's estate.

16.     Forest claims the Defendants "directed and controlled the affairs of [the Debtor] at all times."  Petition ¶ 39.  Forest claims that Defendants exercised their control over the Debtor by, among other things, inducing the Debtor to breach its contracts with Forest, and preventing or hindering the Debtor's performance under those contracts.  Petition ¶¶ 45 and 54 (Defendants "induc[ed the Debtor] to breach the contracts on multiple occasions in a variety of ways" and "prevent[ed] or hinder[ed the Debtor's] ability to perform under the contracts.").  Forest then alleges – critically – that, after inducing and/or forcing the Debtor to breach its contract with Forest (by not paying Forest sums Forest claims were due), "Guggenheim knowingly 'swept' all available funds out of the [Debtor's] accounts on a monthly basis," and took from the Debtor an interest in real property that Forest claims should have gone to it.  *Id.* ¶  39.  Thus, Forest's true complaint is that the Defendants improperly took from the Debtor money and property that should have gone to Forest.  *Id.* ¶¶ 39 (complaining that, as a result of Defendants' conduct, the Debtor "has assets insufficient to satisfy the Award to Forest").

17.     On their face, these claims state a cause of action accruing in the first instance to the Debtor, which was allegedly forced into breaching a contract.  But for this harm to the Debtor, Forest would not have suffered.  The Debtor could have brought its own claim for tortious interference against the Defendants pre-petition, making this claim property of the Debtor's estate post-petition.

18.     More importantly, when focus is properly placed on the nature of Forest's alleged injury, these claims amount to claims for fraudulent transfers:  what Forest really is complaining about is the Defendants' alleged concerted efforts to "sweep" and "siphon" money and property from the Debtor, to the detriment of Forest.  Petition ¶¶ 39 and 93 (complaining about "monies siphoned away from [the Debtor] by [the Defendants] to avoid payment to Forest").  No matter how styled, these claims really amount to complaints about fraudulent transfers.  *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 439 (S.D.N.Y. 1993) *aff'd,* 17 F.3d 600 (2d Cir. 1994) ("The creditor of any bankrupt may allege that the prior dealings of other parties with the bankrupt rendered it insolvent; however, such a claim is for fraudulent conveyance properly brought by the Trustee, not for tortious interference of contract."); *In re Andrews*, 94-21308, 2007 WL 596706 *3 (Bankr. S.D.Tex. Feb. 21, 2007) ("Pursuant to *Educators*, this Court looks to the nature of the injury for which relief is sought in order to determine to whom the claim belongs.  Essentially, Cadle's tortious interference claim rests on injuries resulting from alleged transfers of the Debtor's property to third parties.  While Cadle has styled its action to personalize the harm caused by these transfers in the form of interfering with collection of its judgment, Cadle's injuries nonetheless stem from transfers of the Debtor's property.").

19.     It is well-settled that claims for fraudulent conveyances are the exclusive property of the Debtor's bankruptcy estate.  *In re Moore*, 608 F.3d 253, 262 (5th Cir. 2010) (fraudulent transfer claims are property of the estate under *In re Educator's Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994) and under 11 U.S.C. §§ 541(a)(1) and 544(b)).  Accordingly, Forest lacks standing to pursue its tortious interference claims.

**c. Forest's money had & received, unjust enrichment, fraudulent transfer, conversion, suit to quiet title, trespass to try title and constructive trust claims belong to the Debtor's estate.**

20.     Forest has pled a variety of claims whose total purpose is to return directly to Forest assets alleged to have been improperly taken from the Debtor.  Thus, for example, Forest's claims for money had & received and unjust enrichment assert that the Defendants took money *from the Debtor* that should ultimately have gone to Forest.  Petition ¶¶ 61-67.  Likewise, Forest's claim for conversion asserts that the Defendants took oil & gas production *from the Debtor* that should ultimately have gone to Forest.  *Id.* ¶¶ 87-89.  Similarly, Forest's claim for fraudulent transfers asserts that assets were fraudulently transferred *from the Debtor* to the Defendants, which assets should ultimately have gone to Forest.  *Id.* ¶¶ 72-77.[2]  Forest's claims to quiet title and try title assert that the Defendants exercised dominion and control over *the Debtor's interests* in certain leases, which interests should ultimately have gone to Forest.  *Id.* ¶¶ 29, 32, 95-103.  Finally, Forest's claim for a constructive trust asserts that the Defendants' alleged wrongful conduct justifies a constructive trust over money, assets and property "siphoned away *from [the Debtor]*" by the Defendants "to avoid payment to Forest."  *Id.* ¶ 93.  In sum, each of these claims seeks to divest Defendants of money, assets or other property allegedly wrongfully obtained from the Debtor, and to transfer those assets directly to Forest.

21.     Clearly, if money, assets or other property was, indeed, wrongfully taken from the Debtor, resulting harm is suffered first, and primarily, by the Debtor.  The Bankruptcy Court for the

---

[2] Forest states in footnote 5 to its Motion for Remand or Abstention that "**[t]o the extent** Forest's substantive claims would implicate the bankruptcy trustee's powers of avoidance in any respect with regard to transfers of money or property to any of the Defendants…Forest hereby strikes Count VIII (¶¶ 72-77) of its Amended Petition pursuing fraudulent transfers into the Defendants from Branta Production."  Forest's conditional statement of striking a claim does not properly remove its claim of fraudulent transfer from the lawsuit, and therefore, the claim (which clearly belongs to the Debtor's estate) remains before this Court.  Even should this Court consider the fraudulent transfer claim removed from the lawsuit, most of Forest's remaining claims merely amount (as is discussed throughout this Section of this brief) to superficially re-styled claims of fraudulent transfer, and therefore also belong to the Debtor's estate.

Southern District of Texas, faced with similar facts, noted that while the creditor obviously suffers

harm in this scenario, the harm is first, and primarily, visited upon the bankrupt debtor:

> Essentially, [Plaintiff's] tortious interference claim rests on injuries resulting from alleged transfers of the debtor's property to third parties. While [Plaintiff] has styled its action to personalize the harm caused by these transfers in the form of interfering with collection of its judgment, [Plaintiff's] injuries nonetheless stem from transfers of the Debtor's property. According to [Plaintiff], it was the Debtor who should have received settlement proceeds, a bonus payment, and WOA stock. However, these assets went to third parties. In other words, the initial injury in this case was a direct injury to the Debtor – funds due to the Debtor went to other parties. [Plaintiff] was only injured in this case as an indirect result of the Debtor being denied particular funds. Thus, [Plaintiff's] injuries are secondary to the injuries sustained by the Debtor.

*In re Andrews*, 2007 WL 596706 *3.

22.    As the alleged rightful owner of the money, assets and property in question, it goes

almost without saying that the Debtor could have brought suit in its own name prior to the

commencement of the case to recover the improperly obtained materials.  *See, e.g., Andrews*, 2007

WL 596706 *4 ("[I]f the Debtor was denied funds as described by [the plaintiff-creditor], then the

Debtor would have been able to raise a claim for the injury.").  Accordingly, because these claims

allege harm that is derivative of harm that would have been suffered by the Debtor (if the claims be

true), and because the Debtor could have pursued recover for such harm on its own, each of these

claims is the exclusive property of the bankruptcy trustee.  *In re Educators Group Health Trust*, 25

F.3d at 1284.

### d.  Forest's fraud and negligent misrepresentation claims belong to the Debtor's estate.

23.    Forest claims that the Defendants committed fraud and made negligent

misrepresentations by repeatedly promising, but failing, to pay sums the Debtor owed Forest.

Petition ¶¶ 42 and 48.  Forest claims it relied on these promises when it decided to turn over to the

Debtor operations of certain oil and gas properties, even though the Debtor already owed Forest

money.  *Id.* ¶ 17.  Forest complains that, as a result of its decision to turn over operations of the

properties, it gave up its ability to control the proceeds of production from the properties, and in particular its ability to retain what would otherwise be the Debtor's share of profits in order to satisfy the Debtor's debt to Forest.  *Id.* ¶¶ 18, 38.

24.     An examination of the injury alleged, and its relation to the Debtor, reveals that these claims, like all others, are property of the Debtor's estate.  Forest claims to have been denied its ability to retain production profits in order to repay the debts already owed it by the Debtor.  Forest's inability to cure the debt is merely derivative of the Debtor's alleged failures to pay Forest, for which the Debtor already has been found by an arbitrator to be liable for breaching its agreements with Forest.   In Forest's own words, the Debtor's breaches are the result of the Defendants' "inducing [the Debtor] to breach the contracts on multiple occasions and in a variety of ways and (ii) preventing or hindering [the Debtor's] ability to perform under the contracts." Petition ¶ 54.  Thus, the harm Forest alleges resulted from the Defendants' supposed fraudulent and negligent promises is derivative of the harm that sprung from the Defendants' many alleged abuses of the Debtor.   Such harm, if it occurred, would have been actionable by the Debtor before bankruptcy.  Because these claims seek remuneration for injuries for which the Debtor was entitled to recover, they now belong to the Debtor's estate.

25.     The United States Bankruptcy Court for the Eastern District of Missouri has applied the Texas formula for determining ownership of claims outlined in *Educator's Trust* to similar facts, and found the alleged torts to be property of the debtor's estate.  *See In re Bridge Info. Sys., Inc.*, 325 B.R. 824 (Bankr. E.D. Mo. 2005) *aff'd,* 344 B.R. 587 (E.D. Mo. 2006).  In *Bridge*, Highland, a creditor of debtor Bridge, brought a state court suit against Welsh Carson, a group Highland claimed had controlled the bankrupt debtor, Bridge.  *Id.* at 827-28.  Highland claimed that Bridge had defaulted on its loan obligations to Highland.  *Id.*  According to Highland, in order to stave off Highland filing for involuntary bankruptcy as to Bridge, Welsh Carson represented to Highland that

Welsh Carson had a buyer to buy Bridge. *Id.* Thereafter, Welsh Carson orchestrated two transfers of Bridge assets to Welsh Carson. *Id.* Welsh Carson ultimately failed to secure a buyer of Bridge. Highland sued Welsh Carson in state court, alleging, among other things, a variety of torts, including fraud, negligent misrepresentation and tortious interference in connection with Welsh Carson's promise that it had a buyer for Bridge. *Id.* Highland claimed that it relied on Welsh Carson's representations in deciding not to push Bridge into involuntary bankruptcy, and it was harmed because, after the representations, Bridge assets were secreted away by Welsh Carson.

26.     The *Bridge* Court found that "Missouri courts…utilize the same test employed by the Fifth Circuit in *Educator's Trust*" for determining ownership of claims. *Id.* at 831. The *Bridge* Court recognized Highland's argument that it had standing to pursue its tort claims because "Welsh Carson made the alleged misrepresentations directly to it concerning the existence of potential purchasers of Bridge's assets." *Id.*at 832. However, the *Bridge* Court, applying the *Educator's Trust* test described above, found that, as pled by Highland, the alleged fraud, while directed at Highland, was merely the means Welsh Carson used to improperly get at Bridge's assets. *Id.* ("'"[T]he injury stemming from [Welsh Carson's] misrepresentation was inflicted upon Bridge in that Highland would have prevented Welsh Carson from causing Bridge to make the Pre-Petition Transfers, which caused direct financial harm to Bridge. Accordingly, although Welsh Carson directed the misrepresentations at Highland, Bridge was the direct recipient of the harm stemming from the misrepresentations.").

27.     The same conclusion applies to this case. Here, the real harm alleged to result from Forest's turnover of production to the Debtor (allegedly as a result of the Defendants' fraud and misrepresentations) is that Forest was unable to stop the Defendants from continuing to sweep and siphon the Debtor's assets into their own custody and control. *See* Petition ¶¶ 17-23 (noting that Forest was defrauded into turning over operations of the oil and gas properties to the Debtor and,

once the Debtor had control of the profits of production, the Defendants forced it to make several transfers of assets to the Defendants).   Ultimately, Forest's harm is merely derivative of the harm done to the Debtor, which was – allegedly – misused and abused to perpetrate an ongoing fraud so that Defendants could bleed the Debtor dry of value.   The Debtor could unquestionable have recovered for such abuses on its own and, thus, these claims belong to the Debtor's estate.

28.   Because the harm claimed by Forest in connection with its fraud and negligent misrepresentation claims is actually derived (as alleged) from harm suffered by the estate as a result of the Defendants' alleged ongoing depletion of the Debtor's assets, and because the Debtor could have pursued an action to stop the Defendants from misusing and abusing it to get at its assets, these claims now belong exclusively to the bankruptcy trustee.   *In re Educators Group Health Trust*, 25 F.3d at 1284.

29.   Because all of Forest's claims against Branta are property of the Debtor's estate, the trustee of the Debtor's estate has exclusive standing to bring the claims.   Forest, therefore, has no standing to bring its claims, and this Court should dismiss Forest's claims.

## IV.
## <u>MOTION TO TRANSFER VENUE</u>

*Transferring this case to the court hearing the Branta Bankruptcy would promote the convenience of the parties and the interests of justice.*

30.   As an alternative to considering the above Motion to Dismiss, or in the event any part of the above Motion to Dismiss is not granted, the court should transfer venue of this case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division, where the Branta Bankruptcy already is pending.   As discussed in greater detail below, this proceeding can most expeditiously and economically be resolved in that Court, and transfer would promote both the convenience of the parties and the interests of justice.

31.     Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The "where it might have been brought" language "must be construed with reference to the federal laws delimiting the districts in which such an action 'may be brought,'" and not with reference to state law venue rules.  *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964).  An action that is *at least* "related to" a bankruptcy – like the instant suit – may be brought in the district in which the bankruptcy is pending.  28 U.S.C. § 1409(a); *Edge Petroleum Operating Co., Inc. v. Duke Energy Trading & Mktg., L.L.C.*, 311 B.R. 740, 743 (S.D. Tex. 2003).  Accordingly, transfer of the instant case to the United States District Court for the Southern District of Texas is warranted under 28 U.S.C. § 1404(a) as long as it suits "the convenience of the parties and witnesses" or serves "the interest of justice."

32.     Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  *See* 28 U.S.C. § 1412.  A case arises "under title 11" if it involves "core matters" as defined by 28 U.S.C. § 157(b)(2).  *Grafinanciera, S.A. v. Nordberg*, 492 U.S. 33, 50 (1989).  "Core matters" include matters concerning the administration of the bankruptcy estate; counterclaims by the state against persons filing claims against the estate; orders to turn over property of the estate; proceedings to determine, avoid or recover preferences; proceedings to determine, avoid, or recover fraudulent conveyances; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.  *See* 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (F), (G), (H).

33.     Statutory core proceedings are defined (non-exclusively) in 28 U.S.C. §§ 157(b)(2)(A)-(P).  Definitions (A), (B), (C), (E), (F), (H), (K), (M), and (O) arguably apply to some or all of Forest's claims.  But those that render claims having an impact on *property of the estate* –

for example, definitions (A), (E), (H), (K), (M) and (O) – are particularly applicable to Forest's claims.

34.     As is discussed in detail in the Branta Defendants' Motion to Dismiss (above), in the end all of Forest's claims really seek to recover to Forest money and property it claims was improperly "swept" and "siphoned" from the Debtor.  *See supra*; *see also In re Andrews*, 2007 WL 596706 \*3 (the court focuses on the harm alleged rather than the name assigned to causes of action).  Claims like these are without question "core."  *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 628 (Bankr. S.D. Tex. 2010) ("Identifying, quieting title to, and obtaining possession of property of the estate is a critical part of administering the estate," and is therefore "core.")  Since all of Forest's claims ultimately seek to recover the Debtor's property to Forest, definitions (A) ("matters concerning the administration of the estate"); (E) ("orders to turn over property of the estate"); (H) ("proceedings to determine, avoid, or recover fraudulent conveyances"); (K) ("determinations of the validity, extent, or priority of liens"); (M) ("orders approving the use or lease of property, including the use of cash collateral"); and (O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims") are particularly applicable to Forest's claims.

35.     A summary of Forest's claims and how they seek to unwind fraudulent transfers, determine rights to property owned by the estate (if the alleged fraudulent transfers were unwound), and to identify, quiet title to, and obtain possession of the property of the Debtor's estate, is as follows:

Counts 1 & 2 (Fraud & Negligent Misrepresentations), Petition ¶¶ 41-51:  Forest alleges Defendants made material misrepresentations to Forest in the form of assurances of payment used to convince Forest to turn over operations of certain oil and gas properties to the Debtor.  The true harm Forest claims to have suffered as a result of this "fraud" is that

assuming operations of the properties enabled the Defendants to engage in a series of ongoing fraudulent transfers of money and property the Debtor should have paid to Forest. Forest's fraud claim is, thus, merely a restyled fraudulent transfer action.  *See* the more detailed discussion above at ¶¶ 23-37.  Thus, as with most of Forest's claims, this claim seeks to unwind fraudulent transfers, but to have the transferred assets go straight to Forest. Since the proper mechanism would be to return fraudulently transferred property to the estate, and then to determine Forest's rights to such property, this claim implicates two different types of core matters:  those that deal with fraudulent transfers, and those that deal with rights to estate property.

<u>Count 3 (Tortious Interference with Contract), Petition ¶¶ 52-56</u>:  Forest alleges that the Defendants prevented and hindered the Debtor's performance of its contract with Forest by bleeding money and property away from the Debtor – through fraudulent transfers – thus leaving the Debtor unable to perform by paying Forest what it was owed under its contracts with the Debtor.  Forest's tortious interference claim is, thus, another restyled fraudulent transfer action.  *See also supra*, ¶¶ 16-19.  Thus, as with most of Forest's claims, this claim seeks to unwind fraudulent transfers, but to have the transferred assets go straight to Forest. Since the proper mechanism would be to return fraudulently transferred property to the estate, and then to determine Forest's rights to such property, this claim implicates two different types of core matters:  those that deal with fraudulent transfers, and those that deal with rights to estate property.

<u>Count 4 (Civil Conspiracy), Petition ¶¶ 57-60</u>:  Forest alleges Defendants conspired to commit the aforementioned torts.  As this claim is merely derivative of those mentioned in the previous 3 Counts, this claim is, like those, "core."

Count 5 (Money Had and Received), Petition ¶¶ 61-64:   Forest alleges that
Defendants are wrongfully holding "money attributable to production from [the Debtor's
share of] the Property," which the Defendants "siphoned" and "swept" from the Debtor.   In
essence, then, Forest seeks a determination that it owns money that was, prior to fraudulent
transfers to the Defendants, held by the estate.   Again, then, in a single cause, Forest seeks to
unwind fraudulent transfers and determine ownership of what would be, after such transfers
were unwound, the Debtor's property.   Such matters clearly are "core" under the above-
discussed sections of 28 U.S.C. § 157(b)(2).


Count 6 (Unjust Enrichment), Petition ¶¶ 65-67:   Forest alleges Defendants "have
been unjustly enriched by the revenues from the wells Forest drilled for which [Debtor]
never paid."   Again, because Forest consistently alleges that the Defendants obtained the
referenced enrichment by "siphoning" and "sweeping" it from the Debtor through improper
transfers, this cause of action amounts to an attempt to recover money that was fraudulently
transferred from the Debtor, and is therefore "core."   Thus, as with most of Forest's claims,
this claim seeks to unwind fraudulent transfers, but to have the transferred assets go straight
to Forest.   Since the proper mechanism would be to return fraudulently transferred property
to the estate, and then to determine Forest's rights to such property, this claim implicates
two different types of core matters:   those that deal with fraudulent transfers, and those that
deal with rights to estate property.

Count 7 (Assisting and Encouraging), Petition ¶¶ 68-71:   Forest alleges Defendants
"intended to provide the others substantial assistance and encouragement while committing
the wrongs [i.e., fraudulent transfers] against Forest."   As this claim is merely derivative of
the core matters alleged by Forest throughout its Petition, this claim is likewise "core."

Count 8 (Fraudulent Transfer), Petition ¶¶ 72-77:  Forest alleges Defendants received transferred assets from the Debtor "with the actual intent to hinder, delay, and defraud Forest."[3]   Claims for fraudulent transfers are by definition "core."   28 U.S.C. § 157(b)(2)(H); *see also supra*, ¶¶ 19, 20-22.

Count 9 (Piercing the Corporate Veil), Petition ¶¶ 78-81:  Forest alleges the Branta Defendants used the Debtor "to perpetrate a fraud on Forest" and "evade an existing legal obligation" – *i.e.*, avoid paying Forest sums it claims it was due under its contracts with the Debtor, and under the arbitration Award.  Thus, the piercing claim merely restates the above-mentioned fraud and fraudulent transfer claims:  ultimately, in a single step, Forest seeks to unwind fraudulent transfers, figuratively returning money and property to the Debtor, and to have that money and property transferred to Forest to satisfy what the Debtor owes it.  Such a claim implicates two different categories of "core" matters:  those that deal with fraudulent transfers, and those that deal with identifying, quieting title to, and/or determining rights to estate property.

Count 10 (Joint Enterprise), Petition ¶¶ 82-86:  Forest alleges Defendants expressly or impliedly agreed to commit the wrongful acts about which it complains.  Since this claim is merely derivative of the fraudulent conveyances Forest really is complaining about, this claim is "core" like the others.

Count 11 (Conversion), Petition ¶¶ 87-91:  Forest alleges Defendants wrongfully exercised dominion and control over production from oil & gas interests owned by the Debtor, and profits from that production.  Importantly, Forest asserts that the Defendants obtained dominion and control over these assets through alleged fraudulent and improper transfers.  Thus, as with most of Forest's claims, this claim seeks to unwind fraudulent

---

[3] *See supra* footnote 2.

transfers, but to have the transferred assets go straight to Forest.   Since the proper mechanism would be to return fraudulently transferred property to the estate, and then to determine Forest's rights to such property, this claim implicates two different types of core matter:  those that deal with fraudulent transfers, and those that deal with rights to estate property.

Count 12 (Constructive Trust), Petition ¶¶ 92-94:  Forest alleges that Defendants siphoned money  away from Debtor to avoid payment to Forest [i.e. fraudulently transferred money] and therefore a constructive trust should be placed on production proceeds.  If the Defendants did, indeed, wrongfully obtain control over the Debtor's funds, the proper mechanism for Forest to reach such funds would be to unwind the wrongful transactions, return the money to the estate, and seek a determination of Forest's rights to the estate's money.  Such matters clearly are "core" in that the implicate fraudulent transfers and efforts to determine rights to estate property.

Count 13 (Suit to Quiet Title), Petition ¶¶ 95-98:  Forest alleges that Defendants fraudulently transferred property from the Debtor that belongs to Forest and Forest seeks recovery of such property.  This claim, like all others, really seeks to unwind alleged fraudulent transfers of the Debtor's property to the Defendants, and to assign to Forest title of what would, after such transactions were unwound, be the estate's property over to Forest.  Such matters are clearly core.

Count 14 (Trespass to Try Title), Petition ¶¶ 99-103:  Forest alleges that Defendants fraudulently transferred property from the Debtor of which it at least owns a possessory interest and seeks recovery of such property.  This claim, like all others, really seeks to unwind alleged fraudulent transfers of the Debtor's property to the Defendants, and to assign

to Forest title of what would, after such transactions were unwound, be the estate's property over to Forest.  Such matters are clearly core.

36.    Additionally, as discussed at length in the above Motion to Dismiss, this case requires a determination by the Court of whether Forest or the bankruptcy estate owns the claims Forest is asserting.  Determining whether Forest's claims are property of the estate is, itself, a "core" matter.  *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 628 (Bankr. S.D. Tex. 2010) ("Identifying, quieting title to, and obtaining possession of property of the estate is a critical part of administering the estate," and is therefore "core."); *In re Tomlin*, 2002 WL 32136199 at *1 (Bankr. N.D. Tex. Nov. 18, 2002) (holding that determination of what is property of the estate is a core proceeding as it is a matter concerning administration of the estate); *In re Cont'l Airlines*, 138 B.R. 442, 445 (D. Del. 1992) ("The determination of the property of the estate is one of the core proceedings arising under title 11. 28 U.S.C. § 157(b)(2). *See also* 11 U.S.C. § 541. As one bankruptcy court has stated, 'The determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court.' *In re Fisher,* 67 B.R. 666, 668 (Bankr.D.Colo.1986). *Accord In re Texaco, Inc.,* 109 B.R. 609, 610 (S.D.N.Y.1989).").

37.    Since this case clearly raises "core" matters, Section 1412 applies to the requested transfer as much as Section 1404.  Under either of the aforementioned statutes, then, this proceeding is transferable upon a sufficient showing of either the interest of justice or the convenience of the parties.  Thus, the same analysis applies to transfer of this case no matter which statute is considered the basis for transfer.  *See Norton v. Encompass Services Corp.*, 301 B.R. 836, 839 (S.D. Tex. 2003) (holding, after discussing the factors applicable in an analysis under section 1412, that "[m]any of these factors are similar to those examined under section 1404(a)").

### a. A transfer to the Southern District of Texas would be more convenient for the parties.

38.     <u>None</u> of the parties has an office in the Eastern District of Texas.  Forest's only office in Texas is located in Houston, which is within the boundaries of the Southern District of Texas, to which transfer is sought in this Motion.  *See* Exhibit 1 to the Declaration of Brian Trachtenberg, which is attached as **Exhibit C**.  Likewise, the only offices maintained in Texas by each Branta Defendant are in The Woodlands, which is also within the boundaries of the Southern District of Texas.  *See* Declaration of Fred Tresca, attached as **Exhibit D**, ¶ 3.  Defendant Crossover Resources, LLC – which has been named but has not appeared – reports its principal place of business as Houston, again within the transferee court's territory.  (*See* Exhibit 2 to Exhibit C.)  On information and belief, the only Texas office maintained by either of the remaining defendants – being Guggenheim and Branta Funding II, LLC – is in Houston, within the jurisdiction of the Southern District of Texas Bankruptcy Court.

39.     It is not surprising, given the Houston location of the various parties to this suit, that all of the witnesses to the facts implicated by Forest's allegations are located in Houston.  In particular, all of the Debtor's personnel, and all of the personnel of the other Branta Defendants, are in Houston.  The Debtor's personnel communicated almost exclusively with Forest personnel located in Houston, and with Guggenheim personnel located in Houston.  (Exhibit D, ¶ 4.)  Thus, all witnesses are located within the boundaries of the Southern District of Texas.

40.     Because none of the parties has an office in the Eastern District, most have offices in the Southern District, and all relevant witnesses are located in the Southern District, the convenience of the parties weighs heavily in favor of the transfer sought herein.

### b. A transfer to The Southern District of Texas would promote the interests of justice.

41.     Factors cited by courts in determining whether transfer of venue will serve the interest of justice include:  (a) the economic and efficient administration of the bankruptcy estate; (b) the location of the Debtors' bankruptcy case; (c) the state's interest in having local controversies decided within its borders; (d) whether the parties would be able to receive a fair trial in each possible venue; (e) the enforceability of any judgment obtained; and (f) the plaintiff's original choice of forum.  *See Norton v. Encompass Services Corp.*, 301 B.R. 836, 839 (Bankr.S.D.Tex. 2003) (citing *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr.C.D.Cal.2001)).

42.     Most courts agree, however, that the most important consideration when ruling on a motion to transfer venue brought under 28 U.S.C. § 1412 (transfer in the bankruptcy context) is the first factor – *i.e.,* the efficient and speedy administration of the bankruptcy case.  *See In re Vital Link Lodi, Inc.*, 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999); *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 323 n.39 (Bankr. N.D. Ala. 1998) (noting widely held view among courts that the most important factor in determining whether to transfer a bankruptcy case or proceeding is whether the transfer would promote the economic and efficient administration of the bankruptcy estate).  Consequently, unlike the conventional transfer scenario, in which the plaintiff's choice of forum is accorded deference, in the bankruptcy context it is presumed that the proper venue for an adversary proceeding is the district in which the bankruptcy case is pending.  *See Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.)*, 217 B.R. 511, 515 (Bankr. N.D. Tex. 1997); *Vital Link Lodi*, 240 B.R. at 19; *In re Peachtree Lane Assocs., Ltd.*, 198 B.R. 272, 283 (Bankr. N.D. Ill. 1996).

43.     Analysis of the relevant factors in this case compels the conclusion that this matter should be transferred to the Southern District of Texas.

1. <u>A transfer would allow for a more economic & efficient administration of the Branta Bankruptcy estate.</u>

44.     Matters related to a bankruptcy case are presumed to be more properly tried in the Court where the bankruptcy case is pending because it allows for the more economical administration of the bankruptcy estate, and avoids the inefficiencies of piecemeal adjudication. *See In re Zale Corp.*, 62 F.3d 746, 752 (5th Cir.1995).   Forest's claims are clearly related to the Branta Bankruptcy.   The outcome of the State Court Action will most certainly have an effect on the Debtor's bankruptcy estate because any judgment rendered in the State Court Action will alter the Debtor's rights and liabilities in bankruptcy.   *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308, n. 6 (1995).

45.     Further, as described above, all of the claims in this case are now property of the bankruptcy estate.   All are, therefore, within the exclusive custody of the Chapter 7 Trustee.   That Trustee is located within the transferee District.   Pursuing (or choosing not to pursue) the claims is a matter particular to the administration of the estate, and moving the claims to the Trustee's local district will keep the Trustee's (and, thus, the estate's) costs down.   Transfer also will eliminate the burden on the trustee (and, thus, the estate) of having to fight the same fight in two places:  Forest has been scheduled as a creditor of the estate and will likely make a claim against the estate for the 11amount of the Award, and any action by the Trustee to discharge, offset or seek contribution for the debt to Forest will require the trustee to try similar issues to those in the present suit.   Without transfer, the trustee will have to manage the same issues in two different forums, at great expense to the estate.

46.     Finally, the Bankruptcy Court in Houston has been administering the Debtor's bankruptcy case for almost one month.   The Bankruptcy Court in Houston is familiar with the Debtor and its business.   It is in the interest of justice to transfer this case to the Bankruptcy Court in Houston because the Debtor's bankruptcy estate can be most economically and efficiently

administered if this proceeding is tried by the court already overseeing the Debtor's bankruptcy case. *See AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, No. Civ. H-03-4973, 2004 WL 2278770, at *17 (S.D.Tex. Sept. 14, 2004) (citing *Hohl v. Bastian*, 279 B.R. 165, 177-78 (W.D.Pa. 2002)) ("[T]he home court presumption provides that a court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal court."). Based on this strong presumption favoring actions related to a bankruptcy case being litigated in the same district hearing the bankruptcy action, the proper venue for the State Court Action would be the United States Bankruptcy Court in Houston, because of Debtor's pending Chapter 7 case in that district.

2.   The state's-interest, fair-trial, and judgment-enforceability prongs are relatively neutral since the desired transfer is intra-state.

47.   The State of Texas's interest in the underlying case is no different whether suit is heard in the Eastern or Southern Districts of Texas. Likewise, neither party is substantially more or less likely to get a more fair trial in one venue or the other; though, if there were any weight to this factor in this case, the scale would tip slightly in favor of transfer since most of the parties have offices in the transferee venue, and none in the Eastern District. Finally, the parties are no more or less likely to succeed in enforcing a judgment issued by this Court or the transferee court.

3.   Forest's original forum choice does not tip the scale against transfer to the Southern District.

48.   Ordinarily, the Plaintiff's forum choice is "highly esteemed." *See Aguero v. Christopher*, 481 F.Supp. 1272, 1275 (S.D.Tex. 1980). As noted above, however, this factor is given much less weight in the bankruptcy context. *See* supra ¶ 42. Moreover, even if the Court were applying 28 U.S.C. § 1404 (and not § 1412), Forest's Petition makes clear that Forest only filed in Upshur County because it felt it had no choice: Forest cited, as the sole basis for jurisdiction in Upshur County, Texas's mandatory venue statute for cases involving rights in real

property, requiring that suit be filed in the state court for the county in which property is located, as

the sole basis for jurisdiction in Upshur.  *See* Pet. ¶ 7; Tex. Civ. Prac. & Rem. Code § 15.011.  That

venue clause does not control this removed action, which is instead governed by 28 U.S.C. §§

1334(e), 1408 and 1409.  *Van Dusen v. Barrack*, 376 U.S. 612, 624 (1964) (federal courts must look

to federal, and not state, venue laws when analyzing venue issues).

49.     For the foregoing reasons, the Court should transfer this matter to the United States

Bankruptcy Court for the Southern District of Texas – Houston Division, in which the Branta

Bankrtuptcy is now pending.

## V.
## OBJECTION TO MOTION TO REMAND OR ABSTAIN

### *Forest is not entitled to mandatory or permissive abstention, or equitable remand.*

50.     As discussed above in the Branta Defendants' Motion to Dismiss, Forest lacks

standing to pursue its claims.  Accordingly, Forest likewise lacks standing to pursue its Motion for

Remand or Abstention [Docket No. 4] (the "Motion").  Even if the Court were to find that Forest

could pursue its Motion, Forest has failed to carry its burden of proof as to mandatory abstention,

and is undeserving of permissive abstention or equitable remand.

**a.  Forest failed to prove by a preponderance of the evidence at least three of the requirements for mandatory abstention.**

51.     In its Motion, Forest requests that this Court abstain from exercising jurisdiction over

this case pursuant to 28 U.S.C. § 1334(c)(2).  That statute mandates abstention from hearing a state

law claim when:  "(1) The claim has no independent basis for federal jurisdiction, other

than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11 but

does not arise under or in a case under title 11; (3) an action has been commenced in state court; and

(4) the action could be adjudicated timely in state court."  *Schuster v. Mims (In re Rupp &*

*Bowman),* 109 F.3d 237, 239 (5th Cir. 1997).  In order for mandatory abstention to apply, the party seeking abstention *must prove all elements by a preponderance of the evidence* and is not entitled to mandatory abstention if it fails to prove any one element.  *See In re Lorax Corporation*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003).   Because Forest has failed to prove by a preponderance of the evidence that there is no basis for diversity jurisdiction, that all of its claims are non-core proceedings and that its claims could be timely adjudicated in state court, elements (1), (2) and (4) of the mandatory abstention test are not satisfied.  To the extent this Court finds some claims to be core and some not to be core, this Court still has federal jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because all claims arise out of the same common nucleus of operative facts.  Therefore, as to those claims, element (1) of the mandatory abstention test is not satisfied.  This Court must deny mandatory abstention.

1. <u>Forest has not proven by a preponderance of the evidence the absence of diversity jurisdiction.</u>

52.    To establish the absence of an independent basis for federal jurisdiction such as would satisfy the first prong of the mandatory abstention test, Forest asserts that this Court lacks federal question and diversity jurisdiction.  *See* Motion ¶ 11.  Forest's bald assertion as to diversity jurisdiction, however, fails to offer *any* evidence, no less to prove by a *preponderance* of the evidence, that the parties to this case are not wholly diverse.

53.    The *only* "evidence" Forest offers concerning diversity of citizenship is an "example" based on the bald assertion that "Forest is a New York corporation and Guggenheim's principal place of business is New York."  *Id.*  In a footnote, Forest notes that *corporations* have citizenship in each state in which they are incorporated or do business.  *Id.* fn. 12.  But by Forest's own assertions in the Petition, *Guggenheim is <u>not</u> a corporation*; rather, Forest has alleged that "Guggenheim is a *Delaware limited liability company doing business in Texas*…".  Petition ¶ 5.  The bald assertion by Forest in the Motion that Guggenheim's "principal place of business is New

York" is new, and unsupported.  But far more importantly, the law is now well-settled that *a limited liability company has the citizenship of each of its members*, <u>not</u> that of its principal place of business.  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("Supreme Court precedent, case law from other circuits, and the statutory language of … Section 1332 … overwhelmingly support the position that a LLC should not be treated as a corporation for purposes of diversity jurisdiction. Rather, the citizenship of a LLC is determined by the citizenship of all of its members.").

54.     According to Forest, it is a New York corporation, and every other party in this case is a limited liability company.  Petition ¶¶ 1-7.  Because Forest has failed to mention, no less prove, the citizenship of the Defendant-LLCs' members, it has failed to negate by a preponderance of the evidence the existence of a basis for jurisdiction independent of 28 U.S.C.  § 1334(b).  Forest, therefore, has not satisfied the prerequisites for mandatory abstention.

2.  <u>Forest has not proven by a preponderance of the evidence that this case is a non-core proceeding.</u>

55.     Forest is required to *prove* by a *preponderance of the evidence* that this case is a non-core proceeding in order for mandatory abstention to apply, and it has failed to do so.  Forest has not even offered a claim-by-claim analysis of the core or non-core nature of its claims.  Instead, Forest makes blanket assertions about all of its claims as a group, arguing that its claims are non-core because they arise under Texas law, are not directed at the Debtor, and are entirely independent of any bankruptcy law or proceeding.  Motion ¶¶ 12-13.  Forest offers no basis for asserting that these three criteria render *any* claim non-core, and offers no proof that any claim actually meets these criteria.

56.     Wholly absent from Forest's "analysis" is any mention of 28 U.S.C. § 157's nonexclusive list of "core matters," many of which apply to Forest's claims.   As thoroughly discussed in the above Motion to Dismiss for Lack of Standing and in the above Motion to Transfer

Venue, each of Forest's claims, in substance, amounts to a claim to recover property of the estate. *See supra* ¶¶ 13-29.  Each is, therefore, "core."  *See supra* ¶¶ 33-36.

57.    Because Forest has failed to prove by a preponderance of the evidence that any of Forest's claims is non-core, and because each claim clearly is, in fact, "core," element (2) of the mandatory abstention test (requiring claims to be non-core proceedings) is not satisfied, and mandatory abstention should be denied.

3.    <u>To the extent any claims are found not to be core, the federal court has jurisdiction over those claims pursuant to 28 U.S.C. § 1367, defeating the first prong of the mandatory abstention test as to those claims.</u>

58.    While the Branta Defendants believe all claims are "core," should this Court determine that some claims are not, mandatory abstention still does not apply to those claims. When one or more claims fall within the district court's original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to those claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   28 U.S.C. § 1367(a); *See also*, *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (mandatory abstention over claims related to "core" claims was not warranted because the court had supplemental jurisdiction over such claims since they arose from the same nucleus of operative facts as the core claims).  Forest's claims clearly arise out of the same nucleus of operative facts – Forest itself reduces its whole case to a four-paragraph "Summary of Complaints" that applies to all fourteen of its counts.  Petition ¶¶ 37-40; *see also* the discussion of Forest's claims in the above Motion to Dismiss and Motion to Transfer Venue.  Accordingly, any claim not deemed "core" has a basis for jurisdiction independent of 28 U.S.C. § 1334(b).  As to any such claim, then, Forest cannot satisfy the first prong of the mandatory abstention analysis.

4.  <u>Forest failed to prove whether this action could be timely adjudicated in state court.</u>

59.     Forest also failed to prove by a preponderance of the evidence that this action could be timely adjudicated in state court.  Instead, Forest only offers an unsupported guess, speculating that "[t]here is no reason to expect that the state court could not appropriately resolve this case".  Motion ¶ 15.  "A naked assertion that the matter can be timely adjudicated in state court, without more, is insufficient to satisfy the requirement of mandatory abstention."  *See In re Lorax Corporation*, 295 B.R. at 93.  Therefore, this Court should hold that Forest failed to satisfy all elements of 28 U.S.C. § 1334(c)(2) and deny abstention.

60.     While failure to satisfy one element of the mandatory abstention test is enough to deny abstention, Forest failed to prove three of the elements.  This Court must deny mandatory abstention.

**b.  Neither abstention nor remand would promote equity in this case.**

61.     As an alternative to its assertion that the Court must abstain from hearing Forest's claims, Forest requests that this Court permissively abstain and/or grant equitable remand pursuant to 28 U.S.C. §1334(c)(1) and § 1452(b).  This Court should deny Forest's motion because Forest's claims are so intertwined with the Debtor's bankruptcy proceeding that equity would not result from abstention or remand.

62.     Permissive abstention is governed by 28 U.S.C. §1334(c)(1), which provides that a court may abstain from hearing a particular proceeding if it is "in the interest of justice, or in the interest of comity with State courts or respect to State law."  Similarly, 28 U.S.C. § 1452(b) states that a court may remand any removed action to state court on any equitable ground.  In general, both permissive abstention and equitable remand require a court to evaluate and weigh fourteen factors to determine whether they should apply.  *See In re Encompass Services Corporation*,

337 B.R. 864, 878 (S.D. Tex. 2006); *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 784 (E.D. Tex. 2001).

63.     Following is a list of the factors most applicable to Forest's claims and how they weigh against abstention or remand:

a)  **The effect or lack thereof on the efficient administration of the estate if the court recommends remand or abstention:**  The Debtor's bankruptcy estate would be harmed if Forest's claims were abstained or remanded.  Forest has been scheduled as a creditor in the Branta Bankruptcy in connection with the arbitration Award, which Forest likewise seeks to litigate here.  If this case were remanded, the estate may be faced with the possibility of inconsistent rulings concerning the facts underlying Forest's claim for the assets and property at issue in the Award and in this suit.  Additionally, as discussed above, each of Forest's claims is property of the estate.  Remand would require the trustee to pursue its claims (if at all) in Upshur County court instead of in the Southern District of Texas where the Branta Bankruptcy is pending, increasing the estate's costs of litigation.

b)  **The extent to which state law issues predominate over bankruptcy issues:**  As discussed in the above Motion to Dismiss and the above Motion to Transfer, Forest's claims belong to the bankruptcy estate, and almost universally call for an unwinding of fraudulent transfers, and then delivery to Forest of the allegedly fraudulently transferred money and property at issue.  These claims raise significant bankruptcy issues since they would allow one creditor to obtain relief before all others, because they seek to determine title to estate property, and because they seek to adjudicate whom should be liable for the debt scheduled to Forest in the Branta Bankruptcy.  Thus, complicated bankruptcy issues predominate over state law issues in this case.

c) **The difficult or unsettled nature of applicable law:** Forest's claims do not involve difficult or unsettled state law matters that might otherwise tip in favor of remand or abstention.

d) **The presence of a related proceeding commenced in state court or other nonbankruptcy proceeding:** Other than the removed case, there is no other related state or non-bankruptcy proceeding such as might tip in favor of remand or abstention to the same court hearing such a matter.

e) **The jurisdictional bases, if any, other than § 1334:** As discussed above, Forest's claims may be subject to federal diversity jurisdiction under 28 U.S.C. § 1332, and federal supplemental jurisdiction under 28 U.S.C. § 1367, in addition to related-to bankruptcy jurisdiction under 28 U.S.C. § 1334(b), tipping in favor of denying Forest's Motion.

f) **The degree of relatedness or remoteness of proceeding to main bankruptcy case:** As has been discussed throughout this brief, there is little question that Forest's claims are intimately related to the Branta Bankruptcy. Forest's claims, if successful, would bring several forms of assets and property into the bankruptcy estate for sorting out among the various creditors. Indeed, Forest's claims are, themselves, property of the estate. This factor weighs against remand or abstention.

g) **The substance rather than the form of an asserted core proceeding:** Forest's claims amount to claims for fraudulent conveyance of money and property, which are absolutely core proceedings arising under title 11. Therefore, this factor weighs against abstention and remand.

h) **The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court:** There are no state law claims that do not, ultimately, require the court to unwind fraudulent

transfers (thereby returning money and property to the estate), and then to determine title to the money and property once placed with the esatate. Severing state law claims in this case would be inefficient and uneconomical.  Abstention and remand is, therefore, not warranted.

i) **The possibility of prejudice to other parties in the action:**  Should this case be abstained or remanded, all of the Defendants (and not just the Branta Defendants) would be prejudiced because the Debtor's estate may, in the main bankruptcy case, assert the same fraudulent conveyance actions asserted by Forest here, and Defendants will be forced to defend themselves in two separate cases based on the same common nucleus of facts.  In addition, though not part of this suit, the Debtor's estate would be prejudiced by Forest potentially winning a race to judgment against Defendants, and should this occur, Debtor's creditors would be prejudiced by Debtor's estate not being able to recoup the funds that should have gone to the Debtor's estate.

64.     Clearly most factors weigh against equitable abstention and remand.  Forest's claims are core claims that are too intertwined with the bankruptcy proceedings.  Therefore, the federal court has exclusive and original jurisdiction over Forest's claims, and abstention and remand back to the state court would absolutely be an inequitable result.  This Court should deny Forest's request for equitable abstention and remand.

## VI.
## CONCLUSIONS & PRAYER

65.     In the instant action, Forest attempts to recover its arbitration award it won against the Debtor directly from the Defendants.  To do so, Forest alleges that Defendants conspired and schemed to siphon away money and property from the Debtor; in other words, Forest seeks to unwind alleged fraudulent transfers.  Then, Forest claims it is the rightful owner of the money and property that was wrongly transferred to the Defendants; thus, Forest seeks to adjudicate title to property of the bankruptcy estate.  All of Forest's claims are the exclusive property of the

bankruptcy estate, because they seek to recover and adjudicate title to estate property. Therefore, Forest lacks standing because the Branta Bankruptcy estate has exclusive standing over claims for direct injuries to the estate. This Court must dismiss Forest's claims for lack of standing.

66.     Alternatively or additionally, Forest's claims should be transferred to the court hearing the Branta Bankruptcy. That court is best positioned to hear the claims in this suit, which are core matters with a substantial impact on the administration of the estate and its property. All parties and witnesses are located in the transferee district and, thus, transfer would not only promote the efficient administration of the bankruptcy estate, but also the interests of justice and the convenience of the parties.

67.     Finally, Forest's Motion for Remand or Abstention should be denied. Forest failed to prove all elements of mandatory abstention by a preponderance of the evidence, and permissive abstention or remand would not, in this case, promote equity. Therefore, this Court should deny Forest's motion for abstention or remand.

68.     Accordingly, the Branta Defendants pray for an Order or Orders (a) dismissing Forest's claims and/or transferring them; and (b) denying Forest's Motion for Remand or Abstention.


Dated this 14th day of February, 2011.

Respectfully submitted,

POGACH & TRACHTENBERG PLLC

By:  ___/s/ Brian Trachtenberg_____
        Brian Trachtenberg
        Texas Bar No. 24037608
        Adam D. Pogach
        Texas Bar No. 24048734
        Jamie L. Webster
        Texas Bar No. 24056504
        4200 Montrose Blvd., Ste. 590
        Houston, TX   77006
        Phone:  (713) 524-5400
        Fax:  (713) 524-5401

**ATTORNEYS FOR DEFENDANTS
BRANTA EXPLORATION &
PRODUCTION, LLC, BRANTA
OPERATING COMPANY, LLC, AND
BRANTA LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that I have on this 14th day of February, 2011, served a copy of the foregoing pleading on the following counsel, via the Court's ECF filing system as follows:

| | |
|---|---|
| Martin P. Averill | Jeffrey D. Migit |
| Shackelford, Melton & McKinley, LLP | Andrews Kurth LLP |
| 3333 Lee Parkway, Tenth Floor | 600 Travis, Suite 4200 |
| Dallas, Texas  75219 | Houston, Texas  77002 |
| Tel:  (214) 780-1400 | Tel:  (713) 220-4200 |
| Fax: (214) 780-1401 | Fax:  (713) 238-7241 |
| maverill@shacklaw.net | |

       ___/s/_____
       Brian Trachtenberg

## MEET & CONFER CERTIFICATE

    I hereby certify that, on February 14, 2011, I discussed the matters addressed in the Branta Defendants' Motion to Dismiss and their Motion to Transfer Venue with Tad Davidson, counsel for Guggenheim Corporate Funding , LLC and Branta Funding II, LLC, who indicated that those defendants do not oppose either Motion, or the Defendants exceeding the page limits for these motions.

    I further certify that, on February 14, 2011, I discussed the matters addressed in the Branta Defendants' Motion to Dismiss and Motion to Transfer Venue with D.J. Beaty, counsel for Plaintiff Forest Oil Corporation, who indicated that Plaintiff opposes both Motions, but that Plaintiff does not oppose Defendants exceeding the page limits for these motions.

       ___/s/_____
       Brian Trachtenberg